ALFREDO NAZARIO ET AL., demandante y recurrido, *v.* WILLIAM GONZÁLEZ Y/O ANTILLAS ELECTRIC CORPORATION, demandado y recurrente.

*Número:* R-68-285    *Resuelto:* 4 de septiembre de 1973

*Héctor Lugo Bougal, Delia María Auffant* y *Delia Lugo Bougal,* abogados del recurrente; *Manuel Janer Mendía, Rafael A. Marzand Robles* y *Ángel Alfonso Colón,* abogados del recurrido.

PER CURIAM: Se trata de una reclamación de salarios adeudados por concepto de vacaciones acumuladas durante un período de treinta y seis meses, no disfrutadas por el querellante ni compensadas por la querellada, para quien trabajó el querellante en la venta de efectos eléctricos al detal. El tribunal a quo declaró con lugar la querella, fijó en $1,621.20 la suma adeudada y condenó a la querellada a pagarle al querellante el importe de la misma más una suma igual por concepto de penalidad, más las costas. Contrario a las determinaciones del tribunal, sostiene la querellada que el querellante, a la luz de la evidencia presentada, era un contratista independiente y, por lo tanto, no le cubre la ley en cuanto a vacaciones acumuladas. No existe ninguna otra controversia, es decir, ni sobre la suma fijada por el tribunal, ni sobre los decretos de salario mínimo que se invocan, si es que el querellante era un "empleado" y no un "contratista independiente" de la querellada.

La querellada es una corporación doméstica con oficina principal en Río Piedras. Vende enseres eléctricos al detal en toda la isla. Tiene una oficina de operaciones en Ponce. También opera un almacén como centro de distribución y entrega de dichos efectos en aquel sector. Las ventas se realizaban a través de vendedores en toda la isla. El presidente de la corporación querellada les llama "representantes". Según su testimonio, a cada uno de los representantes se le asigna un área o territorio determinado de operaciones designado "territorio protegido en las ventas" fuera del cual el vendedor no puede salirse.

Al comenzar a trabajar, se le asignó al querellante la zona de la Playa de Ponce; la Carretera Núm. 14—Juana Díaz, Coamo y Aibonito; la Núm. 10—Adjuntas y Jayuya; la

Núm. 132—Peñuelas; y la Núm. 2—Tallaboa, Guayanilla, Yauco, Sabana Grande, Guánica y Ensenada. Recibió instrucciones que sólo podía vender los artículos de la querellada. Su remuneración consistía en el 20% de las ventas. Si vendía fuera de su zona, la remuneración le correspondía al representante vendedor que tenía la zona asignada. El querellante tampoco podía dedicarse a otra actividad que no fuera la de agente o representante vendedor de la querellada. Al iniciar sus servicios, el querellante recibió orientación y adiestramiento de la empresa; se le señaló la necesidad de visitar regularmente a ciertos clientes. La oficina de Ponce le proveía de catálogos, listas de precios y el material necesario para llevar a cabo las ventas. Según las determinaciones del tribunal, apoyadas en la prueba desfilada, el querellante entregaba diariamente los conduces y facturas de las ventas que hacía y la querellada le enviaba a los clientes los artículos. Si una persona se comunicaba por teléfono con la oficina a pedir cotizaciones y pertenecía esa zona al querellante, la querellada le daba instrucciones para que lo visitara. Si no vendía, no recibía, remuneración. Pero, si como resultado de sus gestiones la querellada realizaba una venta directa a algún cliente o persona de la zona "protegida", la querellada le pagaba la remuneración convenida. La querellada le anticipaba regularmente, todas las semanas, $60.00, que luego aumentó a $70.00. A fines de mes se le hacía una liquidación final de sus comisiones con los descuentos del seguro social, contribución sobre ingresos y anticipos. En una ocasión, se le fijó al querellante una cuota mínima semanal de ventas. Para estimular a sus vendedores, la querellada celebraba concursos y premiaba aquellos que sobrepasaban las cuotas que les asignaba. El querellante estaba autorizado por la empresa a ofrecer hasta un 25% del precio como descuento para inducir al cliente a comprarlo. Cualquier descuento mayor, tenía que ser autorizado por la empresa. El querellante utilizaba su propio automóvil y asumía todos los gastos de

operación; no tenía horas de entrada o de salida, ni tenía que presentarse a la oficina, excepto para entregar las facturas de las ventas diarias a su supervisor e informarlo de las gestiones que realizaba. El querellante trabajó de lunes a viernes, siete horas diarias normalmente.

Hasta ahí las conclusiones de hecho del tribunal sentenciador. La relación de este querellante con la empresa querellada, a la luz de ciertos hechos previamente relacionados, tiene rasgos propios de un *status* de "empleado". Por otro lado, se destacan otros que, considerados aisladamente, pueden trasladarse a la columna de "contratista independiente". Y algunos que, indistintamente, pueden ubicarse en cualquiera de las dos clasificaciones. Esto no es extraño, según hemos notado en el pasado, pues son raras las ocasiones en que puede establecerse con certeza una tajante distinción entre el empleado y el contratista independiente. *Landrón* v. *J.R.T.*, 87 D.P.R. 94 (1963). Apreciados los factores antes reseñados en conjunto a la luz de la política pública que inspira la legislación social para lograr normas mínimas de bienestar general a los trabajadores—*Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, 86 D.P.R. 447 (1962)—se impone la conclusión que el querellante en este caso está incluido como "empleado" dentro de la protección que en cuanto a disfrute de vacaciones dispone el Decreto Mandatorio Número 8, 29 R.&R.P.R. sec. 245n–138, que es el que cobija la empresa querellada, según se estipuló por las partes.

En *Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, supra, se concluyó que un número de vendedores de automóviles a comisión eran empleados y no contratistas independientes de la casa distribuidora y que, por tanto, tenían derecho a paga por vacaciones por el período que establecen los decretos mandatorios fijando salarios y condiciones de trabajo para el comercio al por menor. Reseñamos allí algunos factores que la jurisprudencia ha considerado importantes para determinar si se trata de un empleado o de un contratista independiente. Entre

otros, se mencionan el grado de control por parte del principal; el grado de iniciativa o juicio que despliegue el vendedor; la inversión que hace el vendedor en equipo y facilidades para poder realizar la labor, y si para ello es necesario establecer una organización de negocios independiente; y la posibilidad de ganancias o pérdidas en las operaciones de venta.

◼ Huelga repetir lo dicho en el caso citado que el concepto tradicional del derecho común sobre los rasgos característicos de un contratista independiente no tienen lugar de aplicación estricta en el campo de salarios mínimos y condiciones de trabajo; ni que un factor en particular sea decisivo para llegar a una conclusión. *Nazario* v. *Vélez*, 97 D.P.R. 458 (1969) ; *Landrón* v. *J.R.T.*, supra.

Hemos visto que el querellante trabajó de lunes a viernes, siete horas diarias normalmente. Esto puede enmarcarse en cualquiera de las dos clasificaciones. Percibía una remuneración que consistía de una comisión del 20% de las ventas que se hicieran en su zona. La forma de pago, por sí sola, no le resta de la condición de empleado. La empresa le tenía fijado un anticipo semanal que inicialmente era de $60.00 semanales y luego de $70.00. En esa forma la empresa retenía cierto control sobre el agente exigiéndole determinado volumen de ventas de manera que como resultado de la liquidación el querellante no resultara ser un deudor de la empresa. Este factor debe sumarse a la columna de empleado. La empresa le asignó una ruta, de la cual no podía salirse. Abónese esto a la condición de empleado, al igual que la prohibición de vender otros artículos o dedicarse a otras actividades que la de agente vendedor de la empresa querellada. No tenía horario fijo de trabajo, pero tenía que presentarse diariamente a la oficina de su supervisor inmediato para entregarle las facturas de las ventas e informarle de las gestiones realizadas. El querellante recibió orientación y adiestramiento; para estimular a los vendedores, conservando así cierto control sobre estos, la querellada celebraba concursos y premiaba a aquellos que

sobrepasaban las cuotas. La querellada le hacía los descuentos de seguro social y contribución sobre ingresos.

Considerados estos factores en conjunto, es evidente que el querellante estaba subordinado a la empresa querellada de quien dependía en gran medida para realizar su labor. La presencia de algunos factores negativos no le resta de su condición de empleado de la querellada y de su derecho a paga por concepto de vacaciones acumuladas y no disfrutadas.

*Se confirmará la sentencia objeto de este recurso.*

El Juez Asociado, Señor Martín, no intervino.